UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 16-31121 (AMN) |
|    PETER J. CORTEZ, JR., | : | Chapter 7 |
|       *Debtor* | : | |
| | : | |
| DONALD ASLAN, | : | Adv. Pro. No. 16-03042 (AMN) |
|       *Plaintiff* | : | |
| v. | : | |
| PETER J. CORTEZ, JR., | : | |
|       *Defendant* | : | |
| | : | Re: ECF No. 1 |

**APPEARANCES**

Christopher G. Winans, Esq.                      Counsel for the Plaintiff
98 Mill Plain Road, Suite 2A
Danbury, CT 06811

George C. Tzepos, Esq.                           Counsel for the Defendant
Law Offices of George C. Tzepos
444 Middlebury Road
Middlebury, CT 06762

# MEMORANDUM OF DECISION AFTER TRIAL

## I.    INTRODUCTION

Before the court is an adversary proceeding commenced by Donald Aslan ("Mr. Aslan" or the "Plaintiff"), seeking a determination that the defendant, Peter J. Cortez, Jr. ("Mr. Cortez" or the "Defendant") should be denied his discharge pursuant to 11 U.S.C. § 727(a)(3) for failing – without justification -- to keep or preserve records from which his financial condition might be ascertained. Following trial, on September 26, 2017, the parties submitted post-trial briefs. AP-ECF Nos. 57, 58, 62, 63. After consideration of the pleadings, testimony, evidence admitted during trial, and the arguments of the parties,

1

the court concludes that Mr. Cortez was justified in failing to maintain receipts under all of the circumstances of this case. Accordingly, for the reasons that follow, judgment shall enter in favor of the defendant, Mr. Cortez.

## II. **JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court, in turn, has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District Court dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(J). This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and may hear and enter a final order in this matter subject to traditional appeal rights. This memorandum shall serve as the court's findings of facts and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

This adversary proceeding arises under Mr. Cortez's chapter 7 case pending in this District. Therefore, venue is proper pursuant to 28 U.S.C. § 1409. Mr. Aslan has standing to seek the relief sought in the complaint because, as a creditor in the chapter 7 case, he may object to the granting of a discharge pursuant to Bankruptcy Code § 727(c)(1).

## III. **PROCEDURAL HISTORY**

On July 14, 2016, Mr. Cortez filed a voluntary chapter 7 bankruptcy petition (the "Petition Date"). ECF No. 1.[1] Mr. Cortez's Schedule E/F (a listing of priority and non-priority unsecured claims) identified Mr. Aslan as a creditor holding an undisputed, unsecured claim of $45,374.00 based upon a judgment. ECF No. 1, p. 24. Mr. Aslan

---

[1] Documents filed in Mr. Cortez's chapter 7 case, bearing case number 16-31121, are identified as "ECF No. ___." Documents filed in this adversary proceeding are identified as "AP-ECF No. ___."

2

timely commenced this adversary proceeding by complaint objecting to the granting of a discharge to Mr. Cortez (the "Adversary Complaint"). AP-ECF No. 1. The sole assertion in the Adversary Complaint was that Mr. Cortez failed to keep financial records from which his financial condition or business transactions might be ascertained in derogation of § 727(a)(3). AP-ECF No. 1, p. 5. Mr. Cortez denied this allegation.[2] AP-ECF No. 22.

Trial was held on September 26, 2017. AP-ECF No. 46.[3] During the trial, Mr. Aslan testified as the sole witness to support his case in chief. Mr. Cortez submitted his own testimony in defense of the allegations by Mr. Aslan. Both sides introduced documentary evidence into the record.[4] Following the trial, both parties filed post-trial briefs. AP-ECF Nos. 57, 58.

### IV. RELEVANT FACTUAL BACKGROUND

In accordance with Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052, after review and analysis of the trial testimony and argument, the documents admitted into evidence, and

---

[2] Prior to the filing of Mr. Cortez's answer, the Clerk of the Court entered a default against Mr. Cortez for his failure to plead. AP-ECF No. 7. The court later vacated that default. AP-ECF No. 23.
[3] AP-ECF No. 46 is the audio file for the trial. A transcript of the trial is available on the docket of this adversary proceeding as AP-ECF No. 50. All citations to testimony from trial shall be to the page and line of the cited testimony as stated in the transcript as AP-ECF No. 50.
[4] In particular, the court admitted:
- Plaintiff's Exhibit 101 – Transcript of Mr. Cortez's testimony during a Rule 2004 Examination ("2004 Examination Transcript");
- Plaintiff's Exhibit 111 - a copy of a deficiency judgment obtained by Mr. Aslan against Mr. Cortez in a Connecticut Superior Court foreclosure action entitled *Donald Aslan v. Peter J. Cortez, Jr.* and bearing docket number DBD-CV-14-6014783-S;
- Plaintiff's Exhibit 112 – a copy of a collection complaint filed by Mr. Aslan against Mr. Cortez in a Connecticut Superior Court action entitled *Donald Aslan v. Peter J. Cortez, Jr.* and bearing docket number DBD-CV-16-6019307-S;
- Plaintiff's Exhibit 113 – a copy of Mr. Aslan's affidavit of debt filed in the collection action against Mr. Cortez bearing docket number DBD-CV-16-6019307-S;
- Plaintiff's Exhibit 114 – a copy of Mr. Cortez's 2015 Federal Tax Return – Form 1040, and
- Plaintiff's Exhibit 115 – a copy of Mr. Cortez's 2014 Federal Tax Return – Form 1040.

The court also admitted Defendant's Exhibit 504 – a copy of a handwritten profit and loss statement for the period January 2016 through June 2016 and Defendant's Exhibit 505 – copies of paystubs and an employee earning report for the period of January to June 2016 from Quality Gem LLC. The exhibits are referenced in the following form: "Plaintiff's Exh. __" or "Defendant's Exh. __" (as the case may be).

examination of the official record of the bankruptcy case and the instant adversary proceeding, the court finds the following facts.

1. The plaintiff, Donald Aslan, is an individual who resides in New York, New York. AP-ECF No. 50, P. 5, L. 1.

2. The defendant, Peter J. Cortez, Jr., is an individual who resides in Southbury, Connecticut. AP-ECF No. 50, P. 46, L. 12-13.

3. At the time of trial, Mr. Cortez was in his late 50s. AP-ECF No. 50, P. 73, L. 10. Mr. Cortez grew up in the Hell's Kitchen area of New York City and attended public school. AP-ECF No. 50, P. 73, L. 12-21. In high school, Mr. Cortez was in special education classes for, among other things, trouble reading. AP-ECF No. 50, P. 74, L. 16-25, P. 75, L. 1-6. Mr. Cortez failed to complete high school and left after the 11th grade to get a job to help support his mother. AP-ECF No. 50, P. 47, L. 5-8, P. 50, L. 3-14.

4. After dropping out of high school at around age 16 or 17, Mr. Cortez completed a course offered by the Federal Education Guidance Service in jewelry making. AP-ECF No. 50, P. 47, L. 8-11, P. 75, L. 8-14, P. 95, L. 8-11.

### *Mr. Cortez's Employment*

5. Mr. Cortez has made a living for the last thirty-one years as a jeweler. For the last eighteen years, and continuing to the time of trial, Mr. Cortez was employed by Quality Gem, LLC ("Quality Gem"). AP-ECF No. 50, P. 46, L. 18-25; AP-ECF No. 50, P. 47, L. 1-2.

6. Quality Gem is a company owned by an individual named Dennis Janofsky. AP-ECF No. 50, P. 47 L. 19; P. 51, L. 3-5.

7. In addition to being Mr. Cortez's employer, Dennis Janofsky is Mr. Cortez's landlord and owns the condominium unit Mr. Cortez resides in located in Southbury, Connecticut. AP-ECF No. 50, P. 84, L. 18-25; P. 85, L. 1-3; Plaintiff's Exh. 101, 2004 Examination Transcript, P. 15, L. 11-17.

8. Mr. Cortez works at Quality Gem on a full-time basis from 9:00 a.m. to 5:30 p.m., but often arrives to work at 8:00 a.m. AP-ECF No. 50, P. 52, L. 4-9; P. 93, L. 12-13. For his work at Quality Gem, Mr. Cortez is compensated on a salary basis of approximately One Thousand Two Hundred and Sixty-Five Dollars ($1,265.00) every two weeks. Defendant's Exh. 505; AP-ECF No. 50, P. 52, L. 13-24; P. 76, L. 15-17. This paycheck from Quality Check is directly deposited into a bank account. AP-ECF No. 50, P. 55, L. 1-6.

9. Mr. Cortez also works for Quality Gem by creating or continuing to work on pieces of jewelry at his home. AP-ECF No. 50, P. 52, L. 3-9; P. 80, L. 11-16. When Mr. Cortez works at home, he considers the work as part of his side business, Pete's Workshop. AP-ECF No. 50, P. 52, L. 7-9; *see also* ECF No. 1 – Schedule A/B Property, P. 12, Response to Question 19; ECF No. 1 – Statement of Financial Affairs, P. 41, Response to Part 11.

10. The "work-shop" of Pete's Workshop is not a separate location or office, but consists of Mr. Cortez's workbench in his home. Plaintiff's Exh. 101, 2004 Examination Transcript, P. 14, L. 18-23.

11. In order to complete the work at home, Mr. Cortez purchases tools or materials from various sources including stores in New York City, flea markets, and yard sales. AP-ECF No. 50, P. 50, L. 7-15; P. 57, L. 16-23; P. 68, L.18-23. Mr. Cortez

5

does not keep his receipts for the items he purchases or of the cost of his travel. AP-ECF No. 50, P. 50, L. 16-21, P. 58, L. 8-15.

12. As compensation for the work Mr. Cortez performs as part of Pete's Workshop, Quality Gem, in addition to his salary, pays Mr. Cortez every two weeks approximately One Thousand Six Hundred Dollars ($1,600.00) in cash.  AP-ECF No. 50, P. 55, L. 7-25, P. 56, L. 1; P. 76, L. 18-25; P. 90, L. 1-8.  The $1,600.00 amount of compensation for work Mr. Cortez performs at home is fixed and does not fluctuate with the amount of work performed by Mr. Cortez in any given two-week period.  AP-ECF No. 50, P. 90, L. 9-25; P. 91, L. 1-3; Plaintiff's Exh. 101, P. 18, L. 1-8, P. 19, L. 13-22.

13. Quality Gem issues Mr. Cortez an IRS Form 1099 for the amounts paid for working on pieces at his home.  AP-ECF No. 50, P. 56, L. 2-3.

14. The work performed as part of Pete's Workshop is performed exclusively for Quality Gem and Mr. Cortez does not repair or sell any jewelry to anyone aside from Quality Gem.  AP-ECF No. 50, P. 80, L. 17-25.

### *Mr. Cortez's Finances*

15. Mr. Cortez acknowledges that: "I'm not really a good bookkeeper."  AP-ECF No. 50, P. 51, L. 19.  He testified: "I try to like file things away.  It just doesn't work." AP-ECF No. 50, P. 84, L. 6-7.

16. Mr. Cortez's wife, Lynn Gionfriddo-Cortez, is responsible for writing checks for the household expenses including the electric and water bills and real estate taxes. AP-ECF No. 50, P. 69, L. 14-16; P. 77, L. 11-13; P. 85, L. 13-25; P. 86, L. 1-3, 19-22.

6

17. Prior to his current wife, Mr. Cortez had a relationship with Ann Aslan, the sister of the plaintiff.  AP-ECF No. 79, P. 2-4.  According to Mr. Cortez, Ms. Aslan holds a Series 7 license and is employed with Northwest Mutual.  AP-ECF No. 50, P. 79, L. 6-25.  During their relationship, Mr. Cortez relied upon Ms. Aslan to help him with his bills.  AP-ECF No. 50, P. 80, L. 1-7.

18. Mr. Cortez does not use and is not comfortable using a computer.  AP-ECF No. 50, P. 77, L. 18-21.

19. Mr. Cortez prepared a hand-written six (6) month profit and loss statement ("Handwritten P&L") for the six (6) months prior to the Petition Date for the work performed for Pete's Workshop.  AP-ECF No. 50, P. 48, L. 13-15; Defendant's Exh. 504.

20. Mr. Cortez did not keep the receipts for the expenses indicated on the Handwritten P&L but rather estimated what he believed the expenses were on a monthly basis.  AP-ECF No. 50, P. 58, L. 8-15; P. 70, L. 6-9; P. 83, L. 15-19.  Several of the expenses, listed on the Handwritten P&L, including transportation and electricity costs were estimates of what he spent monthly.  AP-ECF No. 50, P. 67, L. 6-15; P. 69, L. 2-12; P. 70, L. 2-5.

21. Mr. Cortez has employed the same accountant to prepare his taxes since 2008.  Plaintiff's Exh. 101, 2004 Examination Transcript, P. 11, L. 3-22; AP-ECF No. 50, P. 65, L. 16-18.  Mr. Cortez relies upon his accountant to file his federal income tax returns electronically and rarely reviews them.  AP-ECF No. 50, P. 49, L. 16-24.  Mr. Cortez provides his accountant with information and trust his accountant to accurately prepare his federal income tax returns.  AP-ECF No. 50, P. 59, L. 1-13; P. 65, L. 11-13.

22. During the course of his bankruptcy, Mr. Cortez produced federal tax returns for the two years prior to the Petition Date and the Handwritten P&L. AP-ECF No. 50, P. 47, L. 24-25, P. 48, L. 1-4.

### *Mr. Aslan's Superior Court Actions against Mr. Cortez*

23. In February of 2014, Mr. Aslan commenced a foreclosure action against Mr. Cortez in the Connecticut Superior Court entitled, *Donald Aslan v. Peter Cortez, Jr.*, bearing docket number DBD-CV-14-6014783-S ("2014 Superior Court Case").[5]

24. On June 8, 2015, the Connecticut Superior Court entered a judgment of strict foreclosure finding that the debt owed to Mr. Aslan totaled One Hundred Fifty-Five Thousand, Four Hundred Twenty-Three Dollars ($155,423.66) Sixty-Six Cents. Thereafter, Mr. Aslan, on March 14, 2016, obtained a deficiency judgment against Mr. Cortez in the amount of Forty-Six Thousand and Eighteen Dollars ($46,018.84) Eighty-Four Cents. Plaintiff's Exh. 111.

25. Prior to the entry of the deficiency judgment, on or about February 19, 2016, Mr. Aslan commenced a second Connecticut Superior Court action bearing docket number DBD-CV-16-6019307-S against Mr. Cortez seeking collection of a debt of Forty Thousand Dollars ($40,000.00) based upon a contract executed by Mr. Cortez. Plaintiff's Exh. 112.

**V.     APPLICABLE LAW**

---

[5] The court may take judicial notice, pursuant to Fed.R.Evid. 201(b), of judicial proceedings that have a direct relation to the matter at issue and are matters of public record, including court records that are available to the public through the Connecticut Judicial Branch website at https://www.jud.ct.gov/external/super/default.htm.

A central purpose of the Bankruptcy Code and the discharge provided in 11 U.S.C. § 727, "is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006)(*quoting Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). For the protection of creditors, however, § 727 of the Bankruptcy Code requires a denial of a discharge in certain circumstances. Because "§ 727 imposes an extreme penalty for wrongdoing[,]" the Second Circuit Court of Appeals instructs "that [§ 727] must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996).

Section 727(a)(3) provides in relevant part, that the court shall grant the debtor a discharge, unless –

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained unless such act or failure to act was justified under all of the circumstances of the case.
> 11 U.S.C. § 727(a)(3).

"The purpose and intent of [this section] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936). "In a proceeding under [§] 727(a)(3), '[t]he initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained.'" *Berger & Associates Attys., P.C. v. Kran (In re Kran),* 760 F.3d 206, 210 (2d Cir. 2014)(*quoting In re Cacioli*, 463 F.3d at 235). "If the creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *In re Cacioli*, 463 F.3d at 235 (citations omitted). "[W]hether a

9

debtor's failure to keep books is justified is 'a question in each instance of reasonableness in the particular circumstances.'" *In re Cacioli*, 463 F.3d at 235 (citations omitted). The Second Circuit Court of Appeals finds that the following factors are relevant to the consideration of the reasonableness of a debtor's stated justification:

- the education, experience, and sophistication of the debtor;
- the volume of the debtor's business;
- the complexity of the debtor's business;
- the amount of credit extended to debtor in his business; and
- any other circumstances that should be considered in the interest of justice.

*In re Cacioli*, 463 F.3d at 237 (*citing Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)).

It is a "loose test, concerned with the practical problems of what can be expected of the type of person and type of business involved." *In re Cacioli*, 463 F.3d at 235. "[T]he inquiry into the debtor's financial condition is limited to the span from a reasonable period of time before the bankruptcy filing through the pendency of the bankruptcy proceedings." *In re Kran*, 760 F.3d at 210.

## VI.   DISCUSSION

### a. Mr. Aslan Bears the Burden to Demonstrate that Mr. Cortez failed to preserve books or records from which Mr. Cortez's financial condition might be ascertained.

Mr. Aslan asserts that the court should deny Mr. Cortez a discharge because he failed to keep records of the type and quantity of work he performed as part of Pete's Workshop. The court is unpersuaded that these records were necessary for Mr. Aslan to ascertain Mr. Cortez's financial condition. Even though Mr. Cortez states he has a side business, Pete's Workshop, functionally the work performed as part of that business is simply an extension of Mr. Cortez's work for Quality Gem.[6] Mr. Cortez testified that he

---

[6]   The court notes that Mr. Aslan acknowledged that Mr. Cortez's work with Pete's Workshop was an extension of his work at Quality Gem. AP-ECF No. 50, P. 17, L. 19-24.

10

does not create, sell, or repair any jewelry for anyone besides Quality Gem.  AP-ECF No. 50, P. 80, L. 17-25.  Further Mr. Cortez testified, when he performed work as part of Pete's Workshop it was irrelevant how many hours he worked or how many pieces he worked on, he received a fixed salary from Quality Gem.  AP-ECF No. 50, P. 90, L. 9-25; P. 91, L. 1-3.  Thus, every two weeks, Mr. Cortez received from Quality Gem approximately $1,265.00 for his work performed during regular business hours and $1,600.00 for his work performed as part of Pete's Workshop.  Mr. Aslan failed to introduce any testimony or evidence suggesting that Mr. Cortez's payment arrangement with Quality Gem was different than described or depended on the quantity of hours worked or type of work performed.  Thus, in light of Mr. Cortez's arrangement with Quality Gem,[7] the court is unpersuaded that for Mr. Aslan to determine Mr. Cortez's financial condition Mr. Cortez was required to keep records for the type or quantity of work performed as part of Pete's Workshop.[8]

Supporting his income, Mr. Cortez introduced into evidence his federal income tax returns for the two years preceding the Petition Date, a six-month earnings report from Quality Gem, and the Handwritten P&L.  *See* Defendant's Exh. 501, 502, 504.  The court notes that Mr. Cortez produced at least one 1099 from Quality Gem.  *See* Plaintiff's Exh. 101, 2004 Examination Transcript, P. 7, L. 7-9.  And while 1099s and W-2s were not introduced into evidence during trial and are not being substantively considered, the court notes that Mr. Aslan was in possession of them and that they exist for the years 2010 through 2016.  *See* ECF No. 41, Plaintiff's Proposed Exhibit List, H and I, P. 2; *See also*

---

[7] What is not before the court is the appropriateness or wisdom of a business model where compensation is fixed regardless of the number of hours worked.

[8] Indeed, Mr. Cortez provided sufficient documentation to permit the Chapter 7 Trustee to file a Report of No Distribution.  *See* Docket Entry dated June 28, 2017 in Mr. Cortez's Chapter 7 Bankruptcy case.

11

AP-ECF No. 50, P. 24, L. 1-6.[9]  No testimony or evidence was provided suggesting that Mr. Cortez received more income than what could be ascertained from these records. From this record, the court concludes that Mr. Cortez kept sufficient records to ascertain his income.

However, even if there are sufficient records to ascertain Mr. Cortez's income, Mr. Aslan also asserts that the court should deny Mr. Cortez a discharge for failing to preserve and produce records relating to his expenses.  Specifically, Mr. Aslan argues that Mr. Cortez failed to maintain records supporting the expenses listed on his Handwritten P&L and deductions taken in his tax returns, including the costs of goods sold and other related business expenses.  Mr. Cortez acknowledged that he failed to keep receipts for his expenses and that the figures stated in his Handwritten P&L were estimates.  Mr. Cortez failed to produce any records substantiating these estimates.  AP-ECF No. 50, P. 39, L. 12-17; P. 69, L. 22-24, P. 70, L. 6-8.  The court notes that Mr. Cortez admitted having a bank account and writing checks for expenses, but neither party produced evidence that Mr. Cortez maintained copies of his bank account statements or that he produced any account statements in the course of this litigation.  AP-ECF No. 50, P. 77, L. 6-7, P. 78, L. 8-12, P. 85, L. 13-19.  Without the underlying financial records, it is impossible to determine whether the Handwritten P&L and tax returns that Mr. Cortez produced are accurate.  Accordingly, the court concludes that Mr. Aslan has sustained his burden to show Mr. Cortez failed to keep and preserve any books or records from which his financial

---

[9] During the Trial, Mr. Aslan testified:
Question: What about W-2s?  He did have W-2s, correct?
Answer: Had W-2s.
Question: All right.  And he had the 1099?
Answer: And the 1099.
AP-ECF No. 50, P. 24, L. 1-6.

12

condition might be ascertained since no evidence substantiating expenses was introduced.

**b. In the Absence of Records, Mr. Cortez Bears the Burden to Demonstrate that his Failure to Preserve Records was Justified.**

At this point, the burden shifts to Mr. Cortez to justify the deficiencies in his record keeping. Mr. Cortez asserted that he was justified in failing to keep adequate records of his expenses due to his lack of education, mental inability to keep organized, and lack of business sophistication. AP-ECF No. 58. As noted above, the court must consider a variety of factors when evaluating the reasonableness of a debtor's justification, including: the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice. *In re Cacioli*, 463 F.3d at 237 (ci*ting Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)). After consideration of the *Cacioli* factors, the court concludes that several factors weigh in favor of Mr. Cortez.

First, the court notes that none of the evidence provided at trial suggests that Mr. Cortez possesses the education or experience to qualify him as a sophisticated debtor. "A sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be." *In re Sethi*, 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000). Despite the lack of evidence suggesting sophistication, Mr. Aslan claims that it would be simple for Mr. Cortez to keep records of the work done for Quality Gem. *See* AP-ECF No. 57, P. 3. However, the court finds Mr. Aslan's assumption misplaced. It very may seem "simple" for Mr. Aslan, who has worked as an attorney in a business affairs department for over forty years, to keep records. But Mr. Aslan is not Mr. Cortez. Mr. Cortez dropped out of high school, has no higher education, and has made a living

14

working with his hands. While in school, Mr. Cortez was placed in special education classes. AP-ECF No. 50, P. 74, L. 16-25, P. 75, L. 1-6. Mr. Cortez acknowledged that he has difficulty keeping organized. Additionally, Mr. Cortez noted that he relies on others including lawyers, accountants, and his wife to help manage his affairs. He is uncomfortable using a computer and created a profit and loss statement by hand. Thus, these factors: education, experience, and sophistication weigh in favor of a finding that Mr. Cortez was justified in his inability to maintain records.

Additionally, the complexity of Mr. Cortez's business, Pete's Workshop – if the court even considers it a separate business compared to an extension of his employment with Quality Gem– is not complex. The business consists of Mr. Cortez creating or repairing jewelry for Quality Gem when there is insufficient time to finish the work during his regular full-time hours. His arrangement with Quality Gem – Pete's Workshop's only customer – involves Mr. Cortez being paid a fixed amount every two weeks regardless of the number of hours, the number of pieces worked on, the cost of materials, or the value of the work performed. No testimony or evidence was introduced from Quality Gem to contradict Mr. Cortez's testimony regarding his payment arrangement. Such an arrangement suggests a simplicity not requiring the creation or maintenance of records.[10] It is not for the court to decide whether this arrangement represents a wise business practice, but rather whether Mr. Cortez was justified under these circumstances for failing to maintain his expense receipts. Here, the expense receipts' lack of importance is

---

[10] The court finds this case, and the circumstances of Mr. Cortez's business, distinguishable from the cases cited by Mr. Aslan, including *In re Hecht*, 237 B.R. 7 (Bankr.D.Conn. 1999) and *In re Richardson*, 340 B.R. 689 (Bankr.D.Conn. 2006). In each of those cases, the businesses operated by the debtors were more sophisticated than Mr. Cortez's and involved customers, inventory and/or equipment, and sales transactions. Here, the arrangement between Quality Gem and Mr. Cortez makes the business of Pete's Workshop distinguishable from the businesses operated in the cases cited by Mr. Aslan. Hence, the court does not conclude that the same type of record keeping is required from Pete's Workshop.

15

highlighted by the payment arrangement whereby Mr. Cortez earns the same pay regardless of the expenses incurred.

Mr. Aslan contends that Mr. Cortez is the consummate actor, AP-ECF No. 57, and that this court should find Mr. Cortez's justification unreasonable because, among other things, Mr. Cortez has been divorced twice, hired professionals, and raised children. The court disagrees. The court is unpersuaded that being divorced or raising children equates to an ability to keep more complex financial records. And while Mr. Cortez was able to hire professionals to assist him in lawsuits and in competing tax returns, the court is not willing to make the conclusion that Mr. Aslan seeks - that an ability to hire professionals equates to Mr. Cortez having the ability to effectively maintain financial records. Rather, the court credits Mr. Cortez's testimony that he relied upon professionals, that he trusted his accountant, and that he did not fully comprehend why certain figures were used in his tax returns but that he had no reason to doubt them. AP-ECF No. 50, P. 59, L. 1-13, P. 65, L. 9-13.

Additionally, the court observed Mr. Cortez's demeanor and testimony and found it credible. The court further notes that "[§ 727] must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *In re Chalasani*, 92 F.3d at 1310. Applying that standard in this case, the court finds Mr. Cortez's testimony, regarding his lack of education and inability to be financially organized, credible. Accordingly, because Mr. Cortez lacked business sophistication, his work was simple in nature, and there was no evidence that the failure to maintain records was a purposeful attempt to obscure his financial condition, the court concludes that, for purposes of § 727(a)(3), Mr. Cortez was justified to keep records of his financial matters

as he did.  As none of the evidence or arguments presented by Mr. Aslan rebut that conclusion, the court overrules Mr. Aslan's objection to Mr. Cortez's discharge.

### VII. CONCLUSION

In conclusion, after consideration of the pleadings, testimony, evidence admitted during trial, the court's own docket and arguments of the parties, the court concludes for the reasons stated herein, that Mr. Aslan did not meet his burden under 11 U.S.C. § 727(a)(3) to show that Mr. Cortez failed to keep records and that his failure was unjustified.  Therefore, Mr. Cortez is entitled to a discharge and a judgment in this adversary proceeding in favor of the defendant, Mr. Cortez shall enter.

Dated on May 18, 2018, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut